**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 1:26-CR-160-MJM** |
| | : | |
| **JAMES DANCY,** | : | |
| | : | |
| **Defendant** | : | |

---

**DEFENDANT'S MOTION FOR RELEASE AND THAT THE COURT SET REASONABLE CONDITIONS OF RELEASE**

Pursuant to 18 U.S.C. § 3142(c), Defendant James Dancy hereby makes this motion for release and requests that the Court set a reasonable combination of conditions that would secure his appearance at future proceedings and assure the safety of the community. In support of this request, he states as follows:

## I. PROCEDURAL BACKGROUND

On or about May 6, 2026, the government secured a one-count indictment against Mr. Dancy. *See* ECF Dkt. No. 1. In that indictment, the government alleged that he possessed a firearm despite being a prohibited person. *Id.* When the government secured its indictment, Mr. Dancy was detained in state custody pending trial on charges arising from the same transaction or occurrence of events described in the indictment. *See State of Maryland v. James Dancy*, C-24-CR-26-000580 (Balt. City Cir. Ct. 2026). The state dismissed its charges on May 19, 2026. But Mr. Dancy continued to be held for a violation of probation, also stemming from the same transaction or occurrence of events that forms the basis for the federal charge. *See State of Maryland v. James Dancy*, C-02-CR-21-000046 (Anne Arundel Cty 2021). On August 31, 2026,

he was released on his personal recognizance in that case. The court has issued a summons notifying him to appear for a violation of probation hearing on January 4, 2027.

Mr. Dancy came before Magistrate Judge Coulson for an initial appearance on September 3, 2026. *See* ECF Dkt. No. 5. At his initial appearance, Mr. Dancy requested a detention hearing. The Court then set a hearing for September 8, 2026. ECF Dkt. No. 9. On that day, Mr. Dancy consented to detention but reserved his right to request a "prompt hearing to set appropriate conditions of release or otherwise address the detention of the defendant." ECF Dkt. No. 10.

Since that time, Mr. Dancy has notified US Probation of his acceptance into the Misha House Transitional Housing and Addiction Treatment Program. US Probation has confirmed Mr. Dancy's acceptance, the general rules of the program, its ability to house and provide him treatment, and the level of supervision that is in place at the program throughout the day. *See* Memorandum from U.S. Probation and Pretrial Services Officer Paige Cameron to Hon. J. Mark Coulson (Sept. 15, 2026) [herein The Paige Memorandum]. Mr. Dancy urges the Court to release him to this program, as it will help him address longstanding issues of trauma and addiction—while ensuring his appearance at future court proceedings, and also, the safety of the community.

## II. LEGAL PRINCIPLES

"As the Supreme Court has made clear, '[i]n our society liberty is the norm, and detention prior to trial…is'—or at least as directed by the Supreme Court and Congress is supposed to be—'the carefully limited exception.'" *See United States v. Kelley,* No. 23-cr-0327-JRR, 2023 U.S. Dist. LEXIS 208945, at *1 (D. Md. Nov. 20, 2023) (citing to *United States v. Salerno*, 481 U.S. 739, 755 (1987)). Under the Bail Reform Act, the government bears the

burden of proving that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f). While non-exhaustive, the Bail Reform Act provides a list that a court may consider in determining whether a set of conditions can assure appearance and the safety of the community. *See* 18 U.S.C. § 3142(c)(1)(B). This list includes whether: a defendant should remain in the custody of a designated person, maintain employment, maintain or commence an educational program, abide by specified restrictions on personal associations, reside at a specific place of abode or have the ability to travel, avoid contact with alleged victims, report on a regular basis to a pretrial officer, comply with a specified curfew, refrain from possessing firearms, refrain from the use of alcohol or drugs, undergo mental health treatment, post property, provide sureties, or return to custody for specified hours. *Id.*

At a detention hearing, the court may take account of factors related to the alleged offense and a defendant's background. For example, the Bail Reform Act allows consideration of "(1) the nature and circumstances of the offense charged…(2) the weight of the evidence against the person…(3) the history and characteristics of the person…[and] (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Still, "[n]othing…shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). Also, courts have concluded that "[t]he weight of the evidence is the least important of [the 3142(g)] factors…and the statute neither requires nor permits a pretrial determination that the person is guilty." *See United States v. Cardenas*, 784 F.2d 937, 939 (9th Cir. 1986)(citing to *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985)).

Where the government proceeds on "a claim of danger to the community, it must prove any facts in support of such a request 'by clear and convincing evidence.'" *See Kelley*, 2023 U.S. Dist. LEXIS 208935, at *1 (citing 18 U.S.C. § 3142(f)(2)). Still, "the Bail Reform Act requires that a court impose the '*least* restrictive further condition, or combination of conditions' that 'will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *Id.* (citing 18 U.S.C. § 3142(c)(1)(B)). It is incumbent upon the "government to prove the absence of any arrangement, short of full-blown detention (*i.e.*, even the inadequacy of home detention or confinement with location monitoring and other conditions), that would 'reasonably assure' the court that the person will appear as required and not endanger the safety of other people or the broader community while awaiting trial." *Id.* at 8.

The defendant's only burden when faced with a presumption of detention is to produce some evidence to rebut it. *See Kelley*, 2023 U.S. Dist. LEXIS 208945, at *9. "Often that evidence takes the form of a proposed plan for conditions of release to assure the court that the defendant will appear, and not pose a danger to the community, while awaiting trial." *Id.* Regardless of whether the defense comes forward with that evidence, or successfully rebuts the presumption, the burden of persuasion remains on the government and the presumption of detention is but a factor for the court to consider. *Id.* (citing *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011)).

## III. APPLICATION

Nothing in Mr. Dancy's past indicates that he is a flight risk. He is a man who was born and raised in Baltimore "and is a lifelong resident of the area." *See* Pretrial Services Report Prepared by U.S. Probation and Pretrial Services Officer Paige Cameron for Hon. J. Mark

Coulson (Sept. 3, 2026). His "U.S. Passport is expired and lost." *Id.* And he only used it once, when "he vacationed in Bermuda in 2008." *Id.*

Meanwhile, Mr. Dancy has put forward a release plan that identifies a specific place of abode at the Misha House Transitional Housing and Addiction Treatment Program. That is a six-to-nine-month program where he would "participate in substance abuse treatment group sessions…at least four, but up to seven days per week." *See* The Paige Memorandum at 2. He would live with other men at a place where "there will be either a peer employee or a house manager at the house seven days per week, and the defendant will be randomly drug tested while residing there." *Id.* In his first few weeks of living at the Misha House Transitional Housing and Addiction Treatment Program, he will be accompanied by a peer or house manager whenever he travels offsite. In addition, the program has a court liaison who will communicate with US Probation. *Id.* The program also has no objection to location monitoring restrictions being placed on Mr. Dancy while he resides with them. *Id.*

This structured environment would be beneficial to Mr. Dancy, while assuring his appearance at future court appearances and safeguarding the community. Throughout his life, Mr. Dancy has suffered with the tragic loss of his brother—who was shot and killed when Mr. Dancy was only thirteen years old. *See* Julie Bykowicz, *Families Greive as Man is Spared Prison Term in Fatal Shooting of Boy; 14-Year-Old was Killed Outside Shed in Baltimore*, The Baltimore Sun, Jun. 25, 2005, at 1B (appended as Exhibit "A"); Stephanie Hanes and Reginald Fields, *Officer Charged in Teen's Death; 14-Year-Old-Boy Is Shot in Back Outside Man's Shed*, The Baltimore Sun, Aug. 21, 2004 (appended at Exhibit "B"). Also, he has a long-standing problem with alcohol. *See* Pretrial Services Report at 3 ("The defendant reported he first used alcohol at the age of 10 and last consumed alcohol the day of the instant offense. He noted he

was only drinking alcohol "here and there" while on probation prior to the instant offense. He reported that he was consuming "four gallons" of liquor daily prior to his incarceration in 2020 and acknowledged he is an alcoholic.").

The living arrangements available through the Misha House Transitional Housing and Addiction Treatment Program align with the Court's ability to set the suggested statutory conditions or "any other condition that is reasonably necessary to assure the appearance of the person as required to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).

**CONCLUSION**

An order releasing Mr. Dancy to the Misha House Transitional Housing and Addiction Treatment Program, allowing U.S. Pretrial Services to place a GPS monitor on Mr. Dancy, and restricting Mr. Dancy's associations, possession of firearms or alcoholic substances, creates a combination of conditions sufficient to assure Mr. Dancy's appearance and non-dangerousness to the community.

For the reasons set forth, Mr. Dancy asks that this Court fashion a set of conditions that allows Mr. Dancy pretrial release.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

/s/
GABRIEL REYES
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962

Fax: (410) 962-3976
Email: gabriel_reyes@fd.org

**CERTIFICATE OF SERVICE**

This motion was filed via ECF, which has made service on all interested parties.

/s/
GABRIEL REYES